WILLIAM H. ROBINSON, Respondent, *v.* THE NATIONAL BANK OF NEWBERNE, Appellant.

The Supreme Court of this State has jurisdiction over an action *ex contractu* brought by a citizen of the State against a National bank located in another State.

The provision of the National Banking Act (U. S. R. S., § 5798) authorizing suits against the banking associations organized under it, to be brought in the court of the county or city of the State in which the association is located, does not have the effect to deprive other courts of jurisdiction; it is permissive, not mandatory, and therefore does not limit the general rule permitting civil cases arising under the laws of the United States to be prosecuted and determined in the State courts, where no exclusive jurisdiction has been vested in the Federal courts, or the State courts have not been prohibited from entertaining jurisdiction.

In such an action an attachment may be issued against the property of the defendant in this State.

The provision of said act (§ 5242) prohibiting the issuing of an attachment, injunction or execution against such an association or its property before final judgment, applies only to an association which has become insolvent or to one about to become so, as specified in the preceding part of the section.

(Argued June 1, 1880 ; decided June 15, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, affirming an order of Special Term denying a motion to set aside an attachment issued in this action. (Reported below, 19 Hun, 477.)

The material facts appear in the opinion.

*A. R. Dyett* for appellant. The court had no jurisdiction to issue the attachment. (U. S. R. S. [ed. of 1878], § 5242; *Farmers', etc., Bank* v. *Deering*, 91 U. S. 29; *Chesapeake National Bank* v. *First National Bank of Baltimore*, 40 Md. 269; Thompson's National Bank Cases, 117, 503; *Central National Bank* v. *Richland National Bank*, 52 How. Pr. 136; *Rhoner* v. *First Nat. Bank of Penn.*, 14 Hun, 126; *Bowen* v. *First Nat. Bank, etc.*, 34 How. Pr. 408; *National Park Bank* v. *Gunst*, 1 Abb. N. C. 292; Judiciary Act of

1789 [U. S. R. S. 1878], §§ 739, 629, subds. 10 and 11 ; *Main* v. *Second National Bank*, 6 Biss. 26 ; *Crocker* v. *Marine Nat. Bank*, 101 Mass. 240, 242.) The power of Congress to protect national banks from attachment and other process before judgment is unquestionable. (*Farmers', etc., Bank* v. *Deering*, 91 U. S. 29, 34 ; *Central National Bank* v. *Richland National Bank*, 52 How. Pr. 136, 137 ; *Crocker* v. *Marine National Bank*, 101 Mass. 240, 242 ; *Chesapeake Bank* v. *First National Bank of Baltimore*, 40 Md. 269 ; *Cadle* v. *Tracy*, 11 Blatchf. 102 ; *Osborn* v. *Bank U. S.*, 9 Wheat. 783 ; *Martin* v. *Hunter's Lessee*, 1 id. 304, 336–337 ; *The Moses Taylor*, 4 Wall. 411, 429 ; *Rhoner* v. *First National Bank, etc.*, 14 Hun, 126.) The plaintiff has all the remedy to which he has any just claim in an action against the defendant in the State or Federal courts of North Carolina. (*Dudley* v. *Mayhew*, 3 N. Y. 15 ; *First Nat. Bank* v. *Lamb*, 57 Barb. 434 ; *Farmers', etc., Bank* v. *Deering*, 91 U. S. 33, 34.)

*T. C. Cronin* for respondent. The defendant, as a non-resident corporation, is liable to attachment. (*Cooke* v. *S. Nat. Bank of Boston*, 52 N. Y. 96 ; *Bowen* v. *First Nat. Bank of Medina*, 34 How. 409 ; *Southwick* v. *First Nat. Bank of Memphis*, 7 Hun, 96 ; *Nat. Bank of Belcher* v. *Pahquioque Bank*, 14 Wall. 383 ; 13 U. S. Stats. at Large, 116, § 57, 1 R. S. of N. Y. [4th ed.] 1115.) An intent to take away jurisdiction from the State courts will not be deduced from doubtful or ambiguous language in an act of Congress. (*Cooke* v. *S. W. B. of Boston*, 52 N. Y. 96 ; *Bowen* v. *First Nat. Bank of Medina*, 34 How. 410.) Whether the right of Congress to pass such acts as may deprive our citizens of the rights given by our own State laws exists is immaterial. (*Cooke* v. *State Nat. Bank of Boston*, 52 N. Y. 107 ; *Marbury* v. *Madison*, 1 Cranch, 137 ; *McCulloch* v. *Maryland*, 2 Wheat. 400 ; 11 Peters, 139 ; *Bank of Augusta* v. *Earle*, 13 id. 585 ; *Ableman* v. *Booth*, 21 How. 516 ; *U. S.* v. *Reese*, 2 Otto, 214 ; *U. S.* v. *Cruikshank*, id. 542 ; *Minor* v. *Happersett*, 21 Wall. 178.) Defendant cannot have all the benefits of the courts of this State, and

refuse to submit to their jurisdiction. (*Swift* v. *Tross*, 55 How. 258.)  The remedy by attachment up to the time of the passage of the act of 1874 is a part of the contract and cannot be destroyed even against insolvent banks. (*Kinsie* v. *Bronson*, 3 How. 315; Story on Cont., § 1379; *McCracken* v. *Hayward*, 2 How. 608; 12 Wheat. 349; 4 id. 341; 1 How. 319, 375; *Danks* v. *Quackenbush*, 1 Denio, 128.)

DANFORTH, J.  The case comes here upon appeal by defendant, from an order made by a General Term of the Supreme Court of the fourth department, upon the following facts: The plaintiff resides in this State, and is a creditor of the defendant. The defendant is a banking association, organized under the laws of the United States (title LXII, U. S. Rev. Stat.), and located at Newberne, North Carolina.  Upon affidavits showing these and other facts sufficient to bring the case within the provisions of the Code of Civil Procedure in force in this State, an attachment was granted by one of the justices of the Supreme Court, and levied upon property of the defendant in the city of New York.  The defendant moved, at the Special Term, to vacate the attachment, but the motion was denied, and the order there made affirmed at General Term.  It is from the order of affirmance that this appeal is taken.  The defendant seeks to sustain the appeal upon two grounds: First. That the Supreme Court had no jurisdiction over the action. Second. If otherwise, that it had no power to grant the attachment. But, notwithstanding the ingenious argument of the learned counsel for the appellant, I think neither position can be sustained.

*First.* As to jurisdiction.

It is not necessary to consider whether Congress might have conferred upon the Federal courts exclusive jurisdiction over actions against National banks, and prohibited the State courts from entertaining them, but this could be done, if at all, by express language or provisions consistent only with that construction. (*Houston* v. *Moore*, 5 Wheat. 1, and other cases cited *infra*.)  In its absence, a State court would have the

same power and jurisdiction in suits to which a National bank
was a party, as if it was an individual. (*Bowen* v. *First Nat.
Bank of Medina,* 34 How. Pr. 409 ; *Cooke* v. *State Nat. Bank
of Boston,* 52 N. Y. 96.)    I do not find such language or pro-
visions in the act under which the defendant is organized.  Nor
is its existence claimed by the learned counsel for the appellant,
who has submitted this case in an exhaustive oral and printed
argument.    In the latter he says :  " And Congress has not
only nowhere deprived State courts of jurisdiction of *actions
against National banks,* but has expressly conferred it, at the
same time conferring a similar jurisdiction upon the Federal
courts ; but in both cases requiring actions and proceedings
against them to be brought *in the State where they are located*
and protecting them from attachment and similar process
*before judgment,*" and asserts that " the plaintiff has all the
remedy to which he has any just claim, in an action against the
defendant, in the State or Federal courts of North Carolina."
The contention then is that, outside of the State where the
bank is located, neither Federal nor State courts have jurisdic-
tion, and that redress for any cause of action must be there
sought.    And as it has been held that the statute referred to
extends to actions *by,* as well as *against* these corporations
(*Kennedy* v. *Gibson,* 8  Wall. 498), it would follow that the
bank must confine its operations to the limits of its own State,
or be deprived of legal and judicial aid to enforce its rights.
This construction seems to be unwarranted.   By the very con-
ditions of its being, the defendant was endowed with certain
powers and privileges, in the exercise of which it might be
brought into relation with citizens of different States, and we
might therefore expect that its liability arising therefrom could
be enforced in the same manner, and to the same extent, as if
it was a natural person, and not a creation of the law.    Its
business was to loan money, and discount commercial paper,
and although located in North Carolina, its transactions might
extend into other States, for its interests would follow the per-
son of its debtor, and it would be concerned in the disposition
of his property, wherever situated.    It is therefore provided

that " it may purchase and hold such real estate as may be
mortgaged to it in good faith by way of security for debts pre-
viously contracted, or such as shall be conveyed to it in satis-
faction of similar debts contracted in the course of its dealings,
or such as it shall purchase at sales under judgments, decrees
or mortgages held by it, or shall purchase, to secure debts due
to it." (§ 5137, sub. 2, 3, U. S. Rev. Stat.) It is obvious, then,
that it might have occasion to sue its debtor in any State, and
resort to the courts therein for protection in the enjoyment of
the property which it is thus permitted to acquire. As the
owner of property it might also incur liability to citizens of the
State, or the municipality where it was situated, and we also
find that it may incur a statutory liability to its borrower, and
that if it violates the law relating to interest, he may recover
back twice the amount of excessive interest paid by him.
Against it, therefore, the individual might find it necessary to
put in motion the machinery of the courts ; and from these
powers and liabilities a right on either side to do so might be
implied.

But this is not left to implication. The statute declares
that the defendant may " sue and be sued in any court of law
and equity, as fully as a natural person." (§ 5136, sub. 4.)
Now such a person, a citizen of North Carolina, might sue in
any State where he could find his debtor, or the property of
his debtor, and he was liable to be sued in any State where he
might happen to be, or where his property could be found, and
the proceeding would in the courts of the State be according
to the jurisdiction given to them by the State. Such suit
might also be brought in the courts of the United States, pro-
vided the contending parties were not citizens of the same State.
If they were it could not have been until the passage of the
National Banking Act of 1864, § 57, amended March 3, 1873,
vol. 17, U. S. Stat. at Large, chap. 269, § 2; § 5198, U. S.
Rev. Stat., where it was, among other things, enacted, " that
suits, actions, and proceedings, against any association under
this act, may be had in any Circuit, District, or Territorial
court of the United States, held within the district in which

such association may be established." The evident object of this provision was to give the Federal court jurisdiction without regard to the citizenship of the plaintiff. (11 Blatchf. 102.) But the same section further provides that such suit, etc., may also be had " in any State, county, or municipal court, in the county or city in which such association is located, having jurisdiction in similar cases." And as above stated, this section has been construed so as to permit suits by, as well as against the corporation. (*Kennedy* v. *Gibson*, 8 Wall. 498.) It is this clause upon which the appellant relies in support of the proposition we are now considering. It has, however, been already declared in this court, that these words cannot be construed as taking away the jurisdiction of the courts of this State over associations similar to this defendant (*Cooke* v. *State Nat. Bank of Boston*, 52 N. Y. 96), and the argument on which that case rests need not be repeated. It finds confirmation, however, in the consequences likely to result from a different doctrine. Nor can we suppose that the general power and liability to sue and be sued, given by statute as above stated, was intended to be repealed or modified in this indirect manner. The general liability subjects them to an action in any court in which an individual in like circumstances might be sued, and the subsequent enumeration of particular courts, without words of exclusion, cannot have the effect to deprive other courts of jurisdiction. (*Owens* v. *Woosman*, 3 Q. B. [L. R.] 469.) If it was otherwise, then a citizen of this State having a claim upon land in which a banking association, located in another State, had an adverse interest, would be compelled to go there to assert his rights as against it. Yet the contrary has been held by the Supreme Court of the United States, in a recent case. (Decided October Term, 1879, *Casey, Recr.*, v. *Adams, etc.*, 21 Alb. Law Jour. 376.) Referring to section 5198, above cited, the court holds that it applies to transitory actions only, and not to such as are by law local in their character, WAITE, C. J., saying : "Section 5136 subjects the banker to suits at law or in equity as fully as natural persons, and there is nowhere in the Banking Act any evidence of an intention on the

part of Congress to exempt bankers from the ordinary rules of law affecting the locality of actions founded on local things. The distinction between local and transitory actions is as old as actions themselves, and no one has ever supposed that laws which prescribed generally where one should be sued, included such suits as were local in their character, either by statute or the common law, unless it was expressly so declared. Local actions are in the nature of suits *in. rem*, and are to be prosecuted where the thing on which they are prosecuted is situated. To give the act of Congress a different construction would be in effect to declare that a National bank could not be sued at all in a local action where the thing about which the suit was brought was not in the judicial district of the United States within which the bank was located. Such a result could never have been contemplated by Congress."

We may construe the words of section 5198, which confer power to bring suits in certain specified courts as permissive merely, and not mandatory, and therefore not limiting the general rule which permits civil cases arising under the laws of the United States to be prosecuted and determined in the State courts, unless exclusive jurisdiction of them has been vested in the Federal courts, or unless Congress has prohibited the State courts from entertaining jurisdiction of such cases. (*Claflin* v. *Houseman, Assignee,* 93 U. S. 130; 1 Kent's Com. 395, 396; *Bank of United States* v. *Devaux,* 5 Cranch, 85; *Osborn* v. *United States Bank,* 9 Wheat. 738; *Teall* v. *Felton,* 1 Com. 537.) In *Houston* v. *Moore* (5 Wheat. 1), Mr. Justice WASHINGTON, in delivering judgment, says (page 27): "I hold it to be perfectly clear that Congress cannot confer jurisdiction upon any courts but such as exist under the Constitution and Laws of the United States; although the State courts may exercise jurisdiction in cases authorized by the laws of the State and not prohibited by the exclusive jurisdiction of the Federal courts." And that case also holds that the mere assignment of jurisdiction to a particular court does not necessarily render it exclusive. It may very well be that when the right in controversy is created by an act of Congress, and

the remedy is prescribed to be by suit in the Federal courts, the State courts have no jurisdiction. But that is not this case, nor are there words of exclusion. If we look into other laws enacted by Congress, and in which provision is made for proceedings before one court rather than another, we shall find a marked difference in language implying clearly a different intent. In title 13, chapter 12, United States Revised Statutes, concerning the judiciary, eight classes of suits and proceedings and litigants of particular character are specified, and as to them it is said : " The jurisdiction vested in the courts of the United States  *  *  *  shall be exclusive of the courts of the several States." We cannot doubt that language equally explicit would have been used had a similar purpose been entertained in regard to matters of controversy under the Banking Law. It was not, and for this and other reasons above stated, I am of the opinion that the Supreme Court had jurisdiction of the matter involved in this action.

*Second.* Is the attachment prohibited ?

To determine this we must look at the whole section relating to it. It is section 5242 of the United States Revised Statutes (edition of 1878), and is in these words :

" § 5242. All transfers of the notes, bonds, bills of exchange, or other evidences of debt, owing to any National banking association, or of deposits to its credit ; all assignments of mortgages, sureties on real estate, or of judgment or decrees in its favor; all deposits of money, bullion or other valuable thing for its use, or for the use of any of its shareholders or creditors, and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; *and no attachment, injunction or execution shall be issued against such association or its property before final judgment in any suit, action or proceeding in any State, county or municipal court."*

It is found in title 62, chapter 4, entitled " Dissolution and

Receivership," and although in ordinary cases it is said that the title of an act of Congress is entitled to little, if any, weight (*Hadden* v. *The Collector*, 5 Wall. 107), yet, when it occurs in the revision of the statutes, it cannot be entirely disregarded. It would seem in such a case to indicate, with great certainty, what was in the mind of the legislator. The subject-matter of the section is the transfer of property by a banking association made "after the commission of an act of insolvency, or in contemplation thereof;" and when made under the circumstances therein stated, such transfer, it says, "shall be utterly null and void; and no attachment * * * shall be issued against such association or its property, before final judgment, in any suit, action or proceeding, in any State, county or municipal court." We concur with the General Term in the opinion that these words of prohibition must be deemed to have the same relation as the other things prohibited, and apply only to insolvent corporations, or one about to become so, and that the object of the entire section is to prevent one creditor of a corporation, whose assets are insufficient to meet its liability, from obtaining a preference, whether it is sought through a voluntary assignment, or transfer or payment, or the form of a legal proceeding. It is plain that this is not the case before us. Nor is the cause of action created by the act; nor does it arise in consequence of the violation of any of its provisions. It is for breach of contract, a remedy for which, by action, exists at common law, and for the enforcement of which, against the property of a non-resident, the statute has given the suit in question. It is a proceeding *in rem* merely, not *in personam;* for that purpose the court neither has, nor does it assume to have, jurisdiction. (*People* v. *Baker*, 76 N. Y. 87.) It must, therefore, like other proceedings *in rem*, be prosecuted, where the thing on which it is founded is situated. (*Casey, Receiver,* v. *Adams, supra.*) The attachment is not to bring the defendant into court; its object is to give the plaintiff execution against the thing attached (*Kilburn* v. *Woodworth*, 5 Johns. 37); it does not go beyond it. It is not to compel the payment of debts, but to make the property of absentees liable for

their debts.    Execution can go no further, either against the property or the person.    It is confined to the property taken, and if it cannot be maintained, the plaintiff is remediless, unless he goes out of his own State and into the place where the debtor is located.    For, as we have seen, according to the appellant's theory, the State court has jurisdiction only in that place, and the same statute which confers it, in like manner restricts the jurisdiction of the Federal courts.

The order appealed from should be affirmed with costs.

All concur.

Order affirmed.