HOLMES & DURHAM v. NATIONAL BANK OF WILMINGTON.

1. Action for breach of contract may be brought in the courts of this State against a national bank established in another State.
2. There is nothing in the acts of Congress, relating to these banks, that prevents an attachment from issuing in such action before judgment.

---

Before MACKEY, J., Charleston, April, 1881.

This was an action by Holmes & Durham against the First National Bank of Wilmington, in the State of North Carolina, commenced in October, 1879. The opinion states the case. The order of the Circuit judge was as follows:

National banking associations are the creatures of Congress, and are fiscal agents of the government. *Bank of Bethel* v. *Pahquioque Bank*, 14 *Wall.* 383. They have such powers only as Congress thought proper to give to them, and are subject to such liabilities only as the national government has chosen to impose upon them. *Osborn* v. *Bank*, 9 *Wheat.* 738; *Commercial Bank* v. *Cleveland*, 10 *Alb. L. J.* 155. The evident intent of the acts creating them is to free them as much as possible from any embarrassment in the fulfillment of their functions. They have full power to contract as bodies corporate, and any contract may be enforced against them as well in the Circuit and District Courts of the United States as in the State, county and municipal courts, provided the action, suit or proceeding is brought in the place in which they are located.

The motive of this restriction is evident. If a national bank can be compelled to answer suit in a locality other than its place of business, absence of its officers, removal and detention of its books may be enforced, and its business operations, and, consequently, its utility, as one of the financial agents of the government, may be greatly hampered, if not entirely suspended. This construction of the act of Congress is sustained by courts

in this country of the highest rank and of unquestionable authority.  *Crocker* v. *Marine National Bank*, 101 *Mass.* 240; *Chesapeake Bank* v. *First National Bank*, 40 *Md.* 269; *Cadle* v. *Tracy*, 11 *Blatch.* 101.  The first ground of demurrer is sustained.

The second ground of demurrer is in the terms of the act of Congress, and it is also sustained.  *Revised Statutes,* § 5242.

This case came up to be heard on demurrer to the complaint. After argument of counsel thereon and consideration thereof, it is ordered, adjudged and decreed that the demurrer be sustained, and the complaint be dismissed.

From this order the plaintiffs appealed upon exceptions raising the precise points decided by this court.

*Mr. T. M. Mordecai,* for appellant.

*Messrs. Simonton & Barker,* contra.

August 1st, 1882.  The opinion of the court was delivered by

SIMPSON, C. J.   The defendant, a national banking association in Wilmington, N. C., created under an act of Congress, has been made a party in this action by attachment of its funds in the hands of a national bank located in Charleston.  The action proper is an action for an alleged breach of warranty in the sale of certain chattels and personalty by the defendant to the plaintiffs, and the attachment is an incident thereto.

The defendant demurred to the action upon two grounds: 1. That the court was without jurisdiction over the defendant, for, that, under the acts of Congress, it is liable only to suits and actions and proceedings brought against it in the State, county or city in which it is located, to wit, in the State of North Carolina, county of Brunswick and city of Wilmington, and nowhere else.   2. That it cannot be proceeded against by attachment, because, under the acts of Congress no attachment can issue against such corporations before final judgment in any suit, action or proceeding in any State, county or municipal court.   Both of these grounds were sustained by the Circuit

judge, who dismissed the complaint. The appeal involves the consideration of these grounds of demurrer.

It is conceded that if the defendant was an ordinary foreign corporation, that the objections made to the action could not be sustained. It is, however, contended that the defendant is a corporation created by act of Congress, and being, in some degree, a financial agent of the United States, that its powers, duties and liabilities are dependent upon the acts which gave it existence, and, under these acts, it cannot be sued except in the State where it is located. In view of this position, the first inquiry to be made is, what provisions have been made on this subject by Congress in the acts creating such associations.

The first act on the subject of national banks is the act of June 3d, 1864, styled "an act to provide a national currency, secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof." 13 *Stat. at L.* 99. In section 8 of this act, it was enacted that any association formed under this act shall, from the date of its organization, be a body corporate, having power to adopt a corporate seal, to make contracts, sue and be sued, complain and defend, in any court of law and equity, as freely as natural persons.

Section 52 of this act provides " that all transfers of the notes, bonds, bills of exchange and other evidences of debt owing to any association, or of deposit to its credit; all assignments of mortgages, sureties, or real estate, or of judgments, or decrees in its favor; all deposits of money, bullion or other valuable things for it use, or for the use of any of its shareholders or creditors, and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, with a view to prevent the application of its assets in the manner prescribed by this act, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void."   Section 57 provides " that suits, actions and proceedings against associations under this act, may be had in any circuit, district or territorial court of the United States held within the district in which such association may be established, or in any State, county or municipal court

C

in the county or city in which said association is located, having jurisdiction in similar cases."

On March 3d, 1873, this act was amended, and especially section 57 above, by adding thereto the following proviso: "*And provided further*, that no attachment, injunction or execution shall be issued against such association or its property before final judgment in any such suit, action or proceeding in any State, county or municipal court." 17 *Stat. at L.* 603.

On June 27th, 1866, Congress passed an act to provide for the revision and consolidation of the statute laws of the United States. 14 *Stat. at L.* 74. The commission appointed under this act, having reported, an act was passed December 1st, 1873, in conformity thereto, known as the Revised Statutes of the United States. In this general act, section 57 of the act of 1869, as amended by section 3 of the act of 1873, was left out as a whole, and section 3 was added to section 52, and made section 5242 of the Revised Statutes. Section 5596 of the Revised Statutes repealed all parts of acts not contained in said revision, and made the sections of the revision applicable thereto, to stand in the place of such repealed provisions. In 1875, an act was passed (18 *Stat. at L.* 300) correcting errors in the Revised Statutes, by which act section 57 of the act of 1864, left out in the previous consolidation, was restored and made a part of section 5198, which is now as follows: " That suits, actions and proceedings against any association under this title may be had in any circuit, district or territorial court of the United States held within the district within which such association may be established, or in any State, county or municipal court in the county or city in which said association is located, having jurisdiction in similar cases."

Thus it will be seen that when this action began, section 5198 above, and the proviso to section 57 of the act of 1864 inhibiting attachment before judgment, were of force, the substance of which, for a proper understanding of the question involved, will now be repeated. Section 5198 provides that these associations may be sued in any circuit, district or territorial court of the United States held within the district where the association is established, or in any State, county or municipal court in the

county or city where it may be located, having jurisdiction in similar cases. And section 5242, which is the section rendering transfers of notes   *   *   *   in contemplation of insolvency *   *   *   void by proviso attached thereto, inhibits attachments against these associations before judgment.

· Now, the question is, whether, with these two provisions of force, this suit can be maintained in a State court not in the State where the bank is located. This will depend upon the construction which must be given to these two provisions. And, first, was it the intent of section 5198 to confer exclusive jurisdiction upon the courts therein named? and, secondly, does the proviso to section 5242 apply to all suits, or only to such suits as might arise in consequence of the attempted transfers of notes  *  *  * made in contemplation of insolvency, which are inhibited in that section, and to which section this proviso is attached?

The eighth section of the act declares that every banking association formed and organized in pursuance thereof, shall be a body corporate, possessed with the usual powers of corporations, to wit, to make contracts, to sue and be sued in any court of law and equity, as a natural person. If the act had stopped at this section, the question presented here could hardly have arisen, as, doubtless, the jurisdiction of the State courts would have been universally conceded when the action was properly brought in accordance with State laws. · Did the subsequent section of the original act, section 57, now section 5198 of the Revised Statutes, conflict with section 8? It certainly did not in express terms. It is true that jurisdiction is conferred on the courts therein named, but not in language which expressly makes that jurisdiction exclusive. The language employed is, that suits, actions and proceedings against such associations *may* be had in said courts. The word " may " is a permissive word, not mandatory and not necessarily exclusive.

There being no express negation, then, of jurisdiction to the State courts generally, the next question is, has jurisdiction been taken away by implication? It has been held in some courts that the jurisdiction of a State court cannot be taken away by implication. *Teall* v. *Felton*, 1 *N. Y.* 537 ; *S. C.*, 2 *Hill N. Y.* 164 ; 26 *Wend.* 192. The subject-matter involved in this action

is an ordinary common law matter—breach of contract. The Circuit Court certainly had jurisdiction of this. The defendant is an artificial being, invested with the rights and privileges, and subject to the liabilities of a natural person, and, ordinarily, should stand before the courts as to jurisdiction over its person as other individuals occupying the same position. Our laws have made provision for making such beings parties to actions under certain conditions where their rights are involved, or their obligations are to be enforced, and in the absence of all express exclusion of jurisdiction by the acts of Congress creating them, the implication should be very strong to divest the State courts of their usual functions in such cases. It should be a necessary implication.

The argument is, that the enumeration of certain courts in the act was wholly useless, unless a restriction was intended; that these courts would have had jurisdiction without this special grant in common with other courts, and, therefore, the only purpose of conferring it expressly must have been to confer it exclusively. This argument has much force, but it is not conclusive. The implication arising from it does not appear to be of that strong controlling character sufficient to paralyze the arm of the State courts, and to render these associations free from State control, enabling them to delay and defraud creditors, and, as was said by Church, C. J., "involving an amount of expense and injustice which we cannot attribute to the intention of the law-making power."

The decisions in other States are not uniform on this question. The two most prominent cases in which the question has been discussed, are the cases of *Crocker et al.* v. *Marine National Bank of the City of New York*, 101 *Mass.* 240, and the case of *Cooke* v. *State National Bank of Boston*, 52 *N. Y.* 97. These cases reached directly opposite conclusions; Gray, J., in Massachusetts, holding that, by force of the act of Congress, such associations could be sued only in the county or city where the association was established, and Church, C. J., in New York, that an intent to take away jurisdiction from the State courts should not be deduced from the doubtful and ambiguous language employed in the act of Congress. The question has never

been made squarely in the Supreme Court of the United States. The nearest approach to it was in the case of *Casey* v. *Adams*, 12 *Otto* 66, but the decision there is not strictly in point, and the respondent's counsel admits frankly that the decisions in the other States are in conflict.

In the absence of any case in our own courts, of direct decisions in the Supreme Court of the United States, and in the conflict between the cases in the courts of the States, the respondent, falling back upon general principles, takes the position that these associations are financial agents of the government, established by act of Congress for that purpose; that, as such, they are exempt from all control of the State authorities, except so far as may be permitted by Congress. He refers to *Van Allen* v. *The Assessors*, 3 *Wall.* 589, in which Chase, C. J., the author of the system, discussed fully the character of these banks and the purpose of their creation.

No doubt they were intended as financial agents of the government, and, being created by act of Congress, they should be entirely free from the legislation of the States; that is, the States could not add to or diminish their powers and duties by adverse legislation or cripple them in any way in the exercise of their legitimate functions; but it does not follow that they are to be regarded as wholly exempt in every respect from responsibility to State laws. This would be giving them a much higher position than any other citizen of the United States. This is not necessary to their usefulness or value as financial agents of the government, and they are not entitled to that position. They have power to contract in the several States, to sue in the State courts, and there can be no reason why they should be exempt from State process when they breach their contracts. There should be reciprocity. In our opinion, the demurrer upon the first ground should have been overruled.

The proviso to section 5242 prohibiting attachment proceedings against these associations before judgment rendered, we think, applies to the suits arising out of the matters referred to in that section. The purpose of this proviso being to prevent discrimination between creditors in cases of insolvency or bankruptcy, and this not being a case arising under that section, there

was no foundation for the demurrer on that ground.   *Robinson*
v. *National Bank*, 81 *N. Y.* 392.   The question of the power of
Congress to strip the State courts of jurisdiction in such cases,
involving, as in this case, simply a common law cause of action,
is not necessarily involved, and, therefore, we have not con-
sidered it.

It is the judgment of this court that the judgment of the
Circuit Court be reversed and the case be remanded for a new
trial.