# PRACTICE REPORTS.

## SUPREME COURT.

### The Market National Bank of New York agt. The Pacific National Bank of Boston, Massachusetts.

*National bank — Foreign corporation — Domestic corporation — National banks, domestic corporation, within the meaning of the Code — When attachment against national bank without the state should be maintained — Burden of showing insolvency of such bank on defendant — Code of Civil Procedure, sections 1216, 1217, 635, 707.*

A national bank, organized under the laws of congress and located within this state, is, within the meaning of the Code, a domestic corporation. and may sue here a national bank without the state, or any foreign corporation, for any cause of action.

Where it is contended that, at the time of the issuing and levy of an attachment against a national bank without the state, such bank was insolvent, the burden of showing that it was insolvent at that time is upon the defendant; and that fact should be made clearly to appear or else the attachment should be maintained.

*Special Term, September*, 1882.

Motion to set aside attachment, levy, judgment and execution.

*Wakeman & Latting*, for plaintiff.

*Vanderpoel, Green & Cuming*, for defendant.

Haight, *J.* — This motion was brought to recover the amount of five certificates of deposit issued by the defendant, and now held by the plaintiff, amounting to the sum of $25,393.47. An attachment was issued and levied upon the property of the defendant in the city of New York. An order of publication of the summons was obtained, and the summons was served personally without the state. Judgment

was entered July 6, 1882, for the amount of such certificates and costs. The defendant now moves to vacate the judgment, the execution, the warrant of attachment and the levy made thereon.

This action is brought to recover a sum of money only; the summons was served without the state. The defendant did not demand a copy of the complaint, or plead. In such cases no judgment could be rendered, except in an action where a warrant of attachment against the property of the defendant has been issued and levied upon property (*Code, secs.* 1216, 1217, 635 *and* 707). It therefore follows that in case the attachment is set aside, all the proceedings following must fail.

It is contended that the plaintiff and defendant are both foreign corporations, and that the plaintiff being a foreign corporation is not authorized by the Code to bring this action. The plaintiff and the defendant are incorporated under an act of congress. The legislature has defined a domestic corporation to be a corporation created by or under the laws of the state, or located in the state, and created by or under the laws of the United States, or by or pursuant to laws in force in the colony of New York before the 19th day of April, 1775. Every other corporation is a foreign corporation (*Code, sec.* 3343, *sub.* 18).

The plaintiff, being located in this state and organized under the laws of congress, must therefore be regarded as a domestic corporation within the meaning of the Code. Section 1780 of the Code provides: "An action against a foreign corporation may be maintained by a resident of this state or by a domestic corporation for any cause of action. An action against a foreign corporation may be maintained by another foreign corporation, or by a non-resident in one of the following cases only: First. Where an action is brought to recover damages for a breach of contract made within the state, or relating to property situated within the state at the time of the making thereof," &c.

I have not been furnished with a copy of the complaint in this action, but the moving affidavits on the part of the defendant state the cause of action to be to recover the sum of $24,390, with interest, as damages for non-payment by defendant of certain evidences of indebtedness, which were alleged to have been made and issued by the defendant, to be payable on demand. The failure to pay the certificate on demand was a breach of a contract, and I fail to see why the cause of action is not one provided for by this section of the Code.

It is contended, further, that at the time of the issuing and levy of the attachment on the 19th day of November, 1881, that the defendant was insolvent and that the attachment was, therefore, prohibited by section 5242 of the United States Revised Statutes.

This section of the statutes was construed by the court of appeals in the case of *Robinson* agt. *The National Bank of Newberne* (*reported in* 81 *N. Y.*, 385–392; *S. C.*, 59 *How.* 18). It was there held that the statute applied only to such national banks as were insolvent. It therefore becomes important to determine whether or not, at the time of the issuing and levying of this attachment, the defendant was insolvent. It appears from the affidavits that on the day preceding the issuing and levying of the attachment, the eighteenth of November, one Daniel Needham, a bank examiner, under the direction of the Hon. John J. Knox, comptroller of the currency, took possession of the bank and made an examination and reported to the comptroller of the currency in reference to its affairs. For some time thereafter the bank remained in charge of the examiner; but subsequently, and on the 14th day of March, 1882, the comptroller of the currency, after the examination as to its affairs, concluded that it was solvent and authorized its board of directors to again open the bank and commence business. The bank thereupon resumed business and continued until May 20, 1882, when it went into liquidation and a receiver was appointed. During this time upwards of

$2,000,000 of the assets of the bank were disposed of in the payment of its creditors in full.

I have carefully been through these figures presented by the several reports of the examiner to the comptroller of the currency, statements made by its board of directors, &c., upon the 18th day of November, 1881, the 11th day of March, 1882, March 14, 1882, and the report bearing date July 11, 1882. It would appear from the last report that many of the assets depreciated in value, and that portions of the bills receivable were uncollectible. But I am not satisfied, from the affidavits presented, that this was the case on the 18th of November, 1881. The burden of showing that the bank was insolvent at that time is upon the defendant. That fact should be made to clearly appear or else the attachment should be maintained. The board of directors, the examiner and the comptroller of the currency, after a careful examination, all agreed that the bank was solvent. The fact that the bank, months afterward, had to suspend and go into liquidation, standing alone, I do not regard as sufficient to authorize a finding that they were mistaken.

I regard the equities of the case as being with the plaintiff. A large sum of money, in the neighborhood of $2,000,000, has since the levy been paid out. Had the bank at that time gone into the hands of a receiver the plaintiff would, with other creditors, have been entitled to have shared according to the amount of its claims in this fund, of which it is now deprived.

I am of the opinion that under all the circumstances of the case the motion should be denied.