THE MARKET NATIONAL BANK OF NEW YORK, RESPCNDENT, *v.* THE PACIFIC NATIONAL BANK OF BOSTON, APPELLANT.

*National banks — what is an act of insolvency within section 5242 of the United States Revised Statutes — the property of an insolvent bank cannot be attached — Appeal from a refusal to vacate an attachment — is proper after payment of the judgment.*

In this action, brought upon five certificates of indebtedness, amounting to $24,390, issued by the defendant, a National bank located and doing business in Boston, an attachment was, on November 19, 1881, issued and levied upon property belonging to it situated in this State. The day before the service of the attachment the doors of the bank had been closed and it had been placed in the possession of an examiner under the authority of the Bank Department of the United States, and it so continued until the 14th of March, 1882, when by the per-

mission of the comptroller of the currency, it was allowed to resume its business. Thereafter it continued in the management and transaction of its affairs until the twenty-second of May, when it was found incapable of proceeding with its business and placed in the hands of a receiver. It appeared that at the time when the attachment was issued the assets of the bank were sufficient to pay its debts and liabilities, exclusive of its capital stock. On the day the attachment was issued the defendant had failed and refused to pay, upon due demand, divers legal debts and obligations then due and owing by it to different persons.

*Held,* that the defendant had committed acts of insolvency within the meaning of section 5242 of the United States Revised Statutes, prohibiting the issuing of attachments before final judgment against the property of National banks which have committed such acts, and that the attachment should be vacated.

*It seems,* that any act proceeding from the inability of the bank to pay its debts as they fall due in the ordinary course of business, is an act of insolvency within the meaning of the said section. (Per Daniels, J.)

An appeal from an order denying a motion to vacate an attachment may be taken after the attached property, or the proceeds thereof, have been applied under an execution to the payment of the judgment, provided the motion to vacate was made before the property had been so applied.

Appeal from an order made at a Special Term, denying a motion to vacate an attachment.

*Willard Bartlett,* for the appellant.

*Abraham Wakeman,* for the respondent.

Daniels, J.:

The attachment was issued upon the ground that the defendant was a banking corporation formed and existing in the State of Massachusetts. Its credit in the State of New York was attached by means of an attachment and finally applied by an execution to the payment of the judgment. This payment was made on the 3d day of October, 1882, while the appeal was not taken from the order until the 2d of November, 1882. For that reason a motion was made with the argument of the appeal itself, to dismiss the appeal.

But by section 682 of the Code of Civil Procedure, a motion to vacate an attachment may be made at any time before the actual application of the attached property or the proceeds thereof, to the payment of the judgment recovered in the action. The motion itself to vacate the attachment was made and decided before this

application of the attached property to the payment of the judgment. It was accordingly within the time for 'that purpose prescribed by this section of the Code, and having been decided adversely to the defendant, the absolute right was given to it of appealing from the order, and that appeal has not been subjected to the contingency that the judgment should not, in the meantime, be paid by the appropriation of the attached property. It was sufficient that the motion was made within the time for that purpose allowed. And having been so made, the defendant was authorized afterwards to prosecute its appeal from the order. The appeal cannot be dismissed, but must, under these circumstances, be disposed of upon its merits.

The application to discharge the attachment was made upon the ground that the defendant being a National banking association formed under the laws of congress, was not liable to be proceeded against in that manner, after it had committed an act of insolvency. And in support of the motion it was claimed that acts of this nature had been committed by the defendant before the attachment itself was issued. The action was brought to recover the amount of five certificates of deposit, upon which the sum of $24,390 appeared to be due and payable. This attachment was issued and served on the 19th of November, 1881. The day before its service the doors of the bank had been closed, and it had been placed in the possession of an examiner, under the authority of the bank department of the United States, and it so continued until the 14th of March, 1882, when, by the permission of the comptroller of the currency, it was allowed to resume its business, and after that it continued in the management and transaction of its affairs until the twenty-second of May, when it was finally found incapable of proceeding with its business, and was placed in the hands of a receiver. By the affidavits, reports and statements produced and read upon the hearing of the motion, the assets of the bank appear to have been sufficient to pay its debts and liabilities, excluding its capital stock, amounting to the sum of $961,370.

This was the probable state of its affairs at the time when the attachment was issued, and in a general sense, without reference to the state of its capital, it may be said to have been solvent; that is, by a proper management and disposition of its property the debts

and liabilities existing against it might be paid. But this ability, by careful management to pay its indebtedness, is not what the statute required to protect the corporation against the charge of having committed an act of insolvency, and by reason of such act to be exonerated from the seizure of its property by attachment. For the statute has provided upon the commission of an act of insolvency, or in contemplation thereof, that all transfers or assignments of its property, or securities, or demands, made by it with a view to prevent the application of its assets, as that has been directed by law, or to give a preference to one creditor over another, except in payment of its circulating notes, shall be void, and that no attachment, injunction or execution shall be issued against such association or its property before final judgment. (U. S. R. S., § 5242.)

The object of this section was to prevent any creditor from acquiring a preference over the other creditors of the association, either by the voluntary act of the association or the instrumentality of legal process of the description of that now in controversy, after any act of insolvency shall be committed. Its purpose was to promote equality among the creditors of the association, and that is not permitted to be evaded or prevented by the attachment of its property. The proper construction of this section was considered in *Robinson* v. *National Bank of Newberne* (81 N. Y., 385, and 19 Hun, 477). And by that construction an attachment against the property of the association can only be maintained where it shall be issued previous to the commission of an act of insolvency, or contemplated insolvency, on the part of the association. As to what the act may be which will place the case within the operation and effect of this section it has not in terms been declared, but the phraseology made use of is not uncommon in statutes of this nature. And such a construction has ordinarily been given to it as to render the act containing it applicable to corporations or associations, still having ability by the careful appropriation of their assets to pay their debts. Such ability is not sufficient to prevent the application of the section. Even though the debts may be paid out of its assets, still it may commit an act of insolvency within the obvious intent of the language of this section. A provision of the bankrupt law not as specific or pointed in its enactment as this section, was considered in the case of *Toof* v. *Martin* (13 Wall., 40), and it was held that "the term

insolvency is not always used in the same sense. It is sometimes used to denote the insufficiency of the entire property and assets of an individual to pay his debts. This is its general and popular meaning ; but it is also used in a more restricted sense to express the inability of a party to pay his debts as they become due in the ordinary course of business. It is in this latter sense that the term is used when traders and merchants are said to be insolvent; and as applied to them it is the sense intended by the act of congress." (Id., 47.) And the same construction was given to another section of the statute quite similar in its import in *Rasin* v. *Ammidown* (15 Hun, 422), where it was said that "insolvency when used in this statute in reference to traders means inability to pay debts as they fall due in the ordinary course of business." (Id., 426.)

The section of the statute applicable to the present case is more explicit in its provisions than either of those upon which these decisions were made. And it was probably made so because of the necessity for stricter legislation concerning the business and operations of the financial associations of the country. For that reason the commission of any act of insolvency, or any act in contemplation thereof, is all that has been required to prevent a banking association from making a transfer of its property, or payment of its money to secure a preference of one creditor over the others. And to permit the same, under the seizure of its property by means of an attachment, was also in like manner prohibited. The act of insolvency, upon which the effect of the other provisions of the section was made dependent, under these authorities must be held to be any act proceeding from the inability of the association to pay its debts in the ordinary course of its business. Scrupulous punctuality is required to be observed in the financial management of these associations. Their efficiency and usefulness require them to be prepared on all occasions to meet their just and unquestioned obligations, and when they fail to do that in consequence of the want of funds, that is an act of insolvency within this section of the statute. Section 12 of the act of June 22, 1874 (ch. 390) enacted for the purpose of amending the bankrupt law, has been brought to the attention of the court, but it justifies no different considerations of the obligations of banking associations. That has provided for the defaults upon which proceedings in bankruptcy might be insti-

tuted, and it in no manner modified or qualified the section of the Revised Statutes to which reference has already been made. It provided for an altogether different proceeding upon facts not included within the provisions of this section, and it can have no effect upon the disposition which should be made of this appeal. Under this construction of the statute it becomes a question of fact to be determined upon the affidavits and papers produced upon the hearing of the motion whether this act of insolvency was committed by this association. It is stated in general terms in the affidavit of Daniel Needham, that "on the 18th day of November, 1881, the defendant committed divers acts of insolvency, to wit : The refusal and failure by said defendant to pay, upon due demand, divers legal debts and obligations then due and owing by defendant to divers persons and corporations." This statement was neither denied nor qualified in any form by either of the other affidavits in the case. But by the sworn complaint in this action its correctness has been confirmed by the statement that on the 19th day of November, 1881, the certificates of deposit held by the plaintiff were "duly presented for payment to the defendant, and payment thereof was refused by the defendant." These facts, as they are set forth in the affidavit, may safely be accepted as a truthful relation of the acts of the defendant preceding the service of this attachment. And they, together with the fact that the association had closed its doors and was placed in possession of an examiner, were evidence of its inability to pay its legal obligations in the ordinary course of its business. (*Brown* v. *Montgomery*, 20 N. Y., 287.)

. And such failure proceeding from this inability, was an act of insolvency within the reasonable signification of this section of the statute. Further proof of the accuracy of the statement made in this affidavit is supplied by the report of the attorney, W. J. Best, who states that at the time when the bank suspended it had less than $13,000 in cash, and the report of the examiner incorporated in the case confirms the truth of this statement. That reported the financial condition of the association on the 18th of November, 1881. In that report the bills of other banks held by this association was stated to be the sum of $9,694, and its gold treasury notes at the sum of $3,049.68, making its total cash on hand to be the amount of $12,743.68, which was very little in

excess of one-half of that which was due to the plaintiff upon its certificates of deposit. These figures fully sustain the report of the attorney, and prove beyond controversy that at the time when the association failed to pay the certificates of deposit held by the plaintiff, the failure proceeded from its financial inability to meet the demands made upon it in the course of its business. And that failure, together with the closing of the doors of the bank, within the language of this section, was an act of insolvency. And by the effect to be given to that act, it prevented the seizure of the defendant's property by the attachment issued in favor of the plaintiff.

The resumption of the business of the bank under the authority of the comptroller of the currency, in the following month of March, in no manner tended to support the right of the plaintiff to the attachment. For the facts upon which that was permitted did not conflict with the evidence showing the commission of these acts of insolvency on the part of the association. At the time when the business was allowed to be resumed, over a million dollars of its indebtedness had been paid off, and about $500,000 owing to the bank had been secured by mortgages, stocks and bonds, which had been brought into it by the debtors as collateral, and instead of having less than $13,000 in cash on hand, as was the fact when the act of insolvency was committed, its cash had been increased to nearly $1,000,000, and was still steadily increasing. It was because of these favorable changes in the condition of the affairs of the bank, and not for the reason that it had committed no act of insolvency, that this resumption in its business was allowed to take place. It was entirely consistent with these facts that the acts of insolvency alleged in support of the motion had taken place before the attachment was issued.

Neither the delay in finally bringing on the motion, nor the change in the property of the defendant, justified the order from which the appeal had been taken. As a matter of fact a prior motion was made to set aside the attachment which resulted in an order to that effect, but as it was finally entered, it was reversed and the motion denied on appeal to the General Term, but without prejudice to the motion which was made for the same purpose in the summer of 1882. For most of the time since the attachment

was served proceedings have been pending to vacate it, because the association was not liable to be proceeded against in that manner, for the reason that it had previously committed the alleged act of insolvency. Besides that, the section of the Code declaring the time within which such a motion may be made, was applicable to the case when the hearing occurred resulting in the order. It was at that time both authorized and regular, and as the attachment was issued in contravention of the prohibition of the section of the Revised Statutes of the United States which has been referred to, it should have been successful, and the attachment itself then set aside. If the plaintiff's position had been prejudiced in the collection of its debts, that has been done by its own act, the consequence of which it has no right to require should be transferred to the defendant.

The order should be reversed, but without costs, and an order entered setting aside the attachment.

Brady, J., concurred.

Present — Brady and Daniels, JJ.

Order reversed and order entered setting aside attachment.