BANK OF MONTREAL *v.* FIDELITY NAT. BANK, (ARMSTRONG, Intervenor.)

(*Supreme Court, General Term, First Department.* June 19, 1888.)

1. BANKS AND BANKING—NATIONAL BANKS—ATTACHMENT AGAINST, UNDER STATE LAWS.
    Rev. St. U. S. § 5242, providing that no attachment before final judgment shall be issued in any state court against a national bank, exempts national banks, whether solvent or insolvent, from attachment under state laws. Following *Butler* v. *Mixter*, 8 Sup. Ct. Rep. 718.

2. SAME—DISSOLUTION BY FEDERAL COURT—PENDING ACTIONS IN STATE COURT.
    The dissolution of a national bank by decree of a federal court does not affect rights of a creditor whose action against the bank was pending at the time in a state court.

Appeal from special term, New York county; CHARLES H. VAN BRUNT, Presiding Justice.

Attachment by the Bank of Montreal against the Fidelity National Bank of Cincinnati. David Armstrong, receiver of the latter bank, intervened, and moved to vacate the attachment. From an order denying such motion, he appeals.

Argued before MACOMBER and BARTLETT, JJ.

*Stephen A. Walker*, for appellant.  *John B. Whiting*, for respondent.

MACOMBER, J.  The attachment in this action was granted on the 18th day of June, 1887, upon the ground that the defendant was a foreign corporation having certain property within this state, which was levied upon under the attachment.  David Armstrong, who intervenes for the purposes of this motion, was appointed receiver of the defendant on the 27th day of June, 1887.  His motion was originally based upon the allegation that since the granting of the attachment the defendant had been dissolved by a decree of the federal court.  But this is not a reason for granting the motion.  It was held, in the case of *Bank* v. *Lacombe*, 84 N. Y 367, that however fatal the adjudication in a foreign tribunal may be to the existence of the defendant corporation in that state, it cannot deprive the creditors of remedies afforded by other forums against its property.  Notwithstanding the dissolution, the corporation is deemed to live, at least to such an extent as to permit creditors who have acquired valid liens to maintain them, and the action to continue in form by its present title as though the defendant had an actual legal existence.

Another question is, whether or not the defendant was, at the time of the service of the attachment, insolvent within the meaning of the national bankrupt law.  By section 5242 of the Revised Statutes of the United States, all transfers or evidences of debt owing to any national banking association or deposits to its credit, all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor, all deposits of money, bullion, or other valuable thing, for its use or for the use of any of its shareholders or creditors, and all payments of money to either, made after the commission of an act of insolvency or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed or with a view to the preference of one creditor to another, except payment of its circulating notes, shall be utterly null and void; "and no attachment, injunction, or execution shall be issued against such association or its property before final judgment, in any suit, action, or proceeding in any state, county, or municipal court."  It is firmly established by the evidence before us that at the time of the granting and of the service of the attachment neither the plaintiff nor its agent had any knowledge, suspicion, or belief that the defendant was in an insolvent condition; on the contrary, Mr. Lang, the plaintiff's agent, testified that he believed the defendant to be wholly solvent.  It further appeared that the defendant continued in business, after the granting of the attachment, on the 18th and 20th days of June, (the 19th being Sunday,) and was not closed by the banking department until the 21st day of that month.  Hence, so far as appearances go, irrespective of the stopping of the payment of checks, the defendant was not, within the meaning of the federal statute, insolvent.  If the defendant was in fact insolvent, such knowledge was possessed only by the officers of the bank, for, as has already been pointed out, it continued business for two days thereafter, paying out money and receiving deposits in the usual and ordinary course of banking business, though it subsequently turned out that the bank was, at the time of the issuing of the attachment, in fact insolvent, that is to say, in the sense that it did not at that time have sufficient property with which to pay all of its debts.  Such insolvency, standing alone, unaccompanied by any act, omission, or purpose, is not what is contemplated by the provisions of the federal statute.  The language of the statute is not broad enough to cover such a case.  On the contrary, it is restrictive in its terms as to the meaning which shall be given to the word "insolvency."  The construction of this statute, as it had been maintained up to the time of the argument of this cause, was to the effect that an attachment might be issued, as was done in this case, provided no act of insolvency or bankruptcy had been committed by the defendant, if done without any

knowledge or suspicion of the contemplation of insolvency and without any effort to get possession of the property of the defendant otherwise than under the laws of the state. The prohibition to the issuing of an attachment before final judgment was limited to cases only where there had been an act of insolvency or contemplation thereof, made with a view to prevent the application of the assets in the manner prescribed by the federal statutes. But, since the argument of this cause, the supreme court of the United States, in the case of *Butler* v. *Mixter*, 124 U. S. 721, 8 Sup. Ct. Rep. 718, have announced a decision which renders further discussion unprofitable, and shows that the previously accepted views of the profession, as well as the decision in this case, are erroneous. The court there says: "It stands now, as it did originally, as the paramount law of the land, that attachments shall not issue from state courts against national banks, and writes into all state attachment laws an exception in favor of national banks. Since the act of 1873, all of the attachment laws of the state must be read as if they contained a provision, in express terms, that they were not to apply to suits against a national bank." Feeling ourselves bound by this decision, it follows that the order appealed from should be reversed, and the attachment vacated; but, under the circumstances, it should be done without costs.

BARTLETT, J., concurs in the result.