dies in excruciating agony, and usually in a state of convulsion, with his limbs all drawn up and distorted. The evidence was such as to raise a fair question of fact whether Harms came to his death by his voluntary act, either by the use of corrosive sublimate (and no other poison is suggested) or otherwise. A curiously similar case is that of Goldschmidt v. Insurance Co., 35 N. Y. St. Rep. 121, 12 N. Y. Supp. 866, in which the general term of the First department, Mr. Justice Willard Bartlett writing, on evidence substantially similar to that in the present action, held that it was proper to submit to the jury the question of suicide. The court said (page 125, 35 N. Y. St. Rep., and page 868, 12 N. Y. Supp.): "While the defendant's view of this man's death may be the true one, it does not seem to me to be supported by such a preponderance of evidence as to warrant the withdrawal of the question from the consideration of a jury." So we cannot say that at the trial of the action at bar there was any such preponderance of evidence as to require a reversal of the judgment. The burden of proving death by suicide was upon the defendant, the natural presumption bein' against death by suicide. Whitlach v. Casualty Co., 78 Hun, 262, 28 N. Y. Supp. 951; Mallory v. Insurance Co., 47 N. Y. 52, 7 Am. Rep. 410. A person reading the evidence might well have a doubt whether Harms "intentionally took his life," or whether he came to his death by the use of corrosive sublimate, and, if he did, whether he intended to use it for the purpose of suicide. No other suggestion of the agency of death is made by the defendant, and the composed attitude of his body was not consistent with the use of corrosive sublimate. The question was pre-eminently one to be decided by a jury, and with their finding we do not feel called to interfere. The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.

---

(67 App. Div. 75.)

## VAN REED v. PEOPLE'S NAT. BANK OF LEBANON, PA.

(Supreme Court, Appellate Division, First Department. December 13, 1901.)

**1. NATIONAL BANKS—ATTACHMENT—FOREIGN CORPORATIONS—SOLVENCY.**

Rev. St. U. S. § 5242, providing that all transfers of evidences of debt owing to any national bank; all assignments of mortgages, etc., in its favor; all deposits for its use or the use of a shareholder or creditor; and all payments of money to either, made after the commission of an act of insolvency or in contemplation thereof, with a view to prevent the application of its assets as prescribed, or with the view of a preference to a creditor, except in payment of its circulating notes, shall be void, and that no attachment shall be issued against such association until final judgment,—prohibits attachments against such banks before judgment, whether solvent or insolvent.

**2. SAME—REPEAL OF STATUTE.**

Rev. St. U. S. § 5242, was not repealed by implication by Act Cong. July 12, 1882 (22 Stat. 102), relating to the extension of succession of national banking associations, and declaring that they shall continue as the same association, provided that jurisdiction for suits by or against them, except between them and the United States, shall be the same as for suits by or against other banks not organized under any law of the

United States, and which do, or might do, banking business where such national bank may be doing business when such suit may be begun, and declaring all laws inconsistent therewith repealed.

Van Brunt, P. J., and O'Brien, J., dissenting.

Appeal from special term, New York county.

Action by Henry Van Reed against the People's National Bank of Lebanon, Pa. From an order denying a motion to vacate a warrant of attachment, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Percy S. Dudley, for appellant.

Carlton B. Pierce, for respondent.

LAUGHLIN, J. The action is brought to recover for legal services, the plaintiff being the assignee of the claim. The warrant of attachment was granted on the ground that the action is on contract to recover a sum of money of a foreign corporation. The defendant appeared specially, and moved to vacate the warrant of attachment on the ground that it was issued in violation of section 5242 of the Revised Statutes of the United States, which provides as follows:

"All transfers of the notes, bonds, bills of exchange or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable things for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets, in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction, or execution shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any state, county, or municipal court."

There being no evidence that the defendant is insolvent, its solvency is to be presumed. Market Nat. Bank of New York v. Pacific Nat. Bank of Boston, 64 How. Prac. 1. It was held in Robinson v. Bank, 81 N. Y. 385, 37 Am. Rep. 508, that this statute does not prohibit the issuing of an attachment against a solvent national bank, and in Raynor v. Bank, 93 N. Y. 371, the court held that the effect of the statute was to prohibit an attachment against a national bank which was insolvent or had committed an act of insolvency. Subsequent to these decisions, Chief Justice Waite, in delivering the opinion of the court in the case of Bank v. Mixter, 124 U. S. 721, 8 Sup. Ct. 718, 31 L. Ed. 567, in construing section 5242 of the United States Revised Statutes, after stating that that section was a re-enactment of section 52 of the original act, and the amendment of section 57 adopted in 1873 consolidated, said:

"The fact that the amendment of 1873 in relation to attachments and injunctions in state courts was made a part of section 5242 shows the opinion of the revisers and of congress that it was germane to the other provisions incorporated in that section, and was intended as an aid to the enforcement of the principle of equality among the creditors of an insolvent bank. But, however that may be, it is clear to our minds that, as it stood originally as part of section 57, after 1873, and as it stands now in the Revised Statutes,

it operates as prohibition on all attachments against national banks under the authority of the state courts. That was evidently its purpose when first enacted, for then it was part of a section which, while providing for suits in the courts of the United States or of the state, as the plaintiff might elect, declares in express terms that, if the suit was begun in a state court, no attachment should issue until after judgment. The form of its re-enactment in the Revised Statutes does not change its meaning in this particular. It stands now, as it did originally, as the paramount law of the land that attachments shall not issue from state courts against national banks, and writes into all state attachment laws an exception in favor of national banks. Since the act of 1873 all the attachment laws of the state must be read as if they contained a provision in express terms that they were not to apply to suits against a national bank."

That was a suit in equity by the receiver of a national bank against attaching creditors and sureties on bonds given by the bank to dissolve attachments, to reduce to his possession securities held by the sureties for their protection against liability, and to restrain the attachment creditors from enforcing the attachment bonds on the ground that the attachments were unauthorized, illegal, and void. At the time the attachments were issued, the bank was embarrassed, its doors were closed, and it was in charge of a bank examiner. It is therefore contended that the question as to whether this statute prohibited attachments against solvent national banks was not necessarily involved in the decision of the case. While this may be conceded, it is evident that the opinion relates to national banks generally, whether solvent or insolvent, and seems to have been intended as an authoritative construction of the statute. We do not find that this case has been modified or distinguished by the supreme court. In Earle v. Pennsylvania, 178 U. S. 449, 20 Sup. Ct. 915, 44 L. Ed. 1146, which was not an action against a national bank, but was a case where an attachment had been issued against the bank as garnishee, Justice Harlan, in delivering the opinion of the court, said:

"Sections 5234, 5235, and 5236, above quoted, have reference to the affairs and property of national banks in the hands of receivers and the administration of its assets by the comptroller; and the words in section 5242, 'no attachment, injunction or execution shall be issued against such an association or its property before final judgment in any suit, action or proceeding in any state, county or municipal court,' are to be construed in connection with the previous parts of the same section declaring null and void certain transfers, assignments, deposits, and payments made after the commission by the bank 'of an act of insolvency, or in contemplation thereof,' with the intent to prevent the application of the bank's assets in the manner prescribed by congress, or with a view to the preference by the bank of one creditor to another. Whatever may be the scope of section 5242, an attachment sued out against the bank as garnishee is not an attachment against the bank or its property, nor a suit against it, within the meaning of that section. It is an attachment to reach the property or interests held by the bank for others."

In that opinion no reference was made to the case of Bank v. Mixter, supra, and we think, therefore, that the court did not intend to modify or limit its former decision. The appellant relies on the case of Bank of Montreal v. Fidelity Nat. Bank, 49 Hun, 607, 1 N. Y. Supp. 852; Id., 112 N. Y. 667, 20 N. E. 414,—which was affirmed by the court of appeals without an opinion on the au-

thority of Pacific Nat. Bank v. Mixter; but it appears from an examination of the record in the former case that the bank was insolvent at the time the attachment was issued, and that the motion to vacate the attachment was made by its receiver.  The case fell clearly within the doctrine previously announced by the court of appeals in Raynor v. Bank, supra.  Under these circumstances the mere fact that the affirmance of the order vacating the attachment was placed upon the authority of Bank v. Mixter, supra, is no indication that the court of appeals intended to overrule its former decision, and acquiesce fully in the broad construction of the statute by the supreme court of the United States.  We have, therefore, no controlling precedent in this state since the federal decision last mentioned.  Our attention has not been called to any case arising since the decision of Bank v. Mixter, supra, where the highest court of any state has attempted to distinguish or refrain from following the opinion there delivered.  We find on investigation that the question has frequently arisen since that decision, and the courts have universally adopted the opinion of the supreme court as an authoritative construction of the statute in question.  Bank v. Le Due (1888) 39 Minn. 415, 40 N. W. 367; Safford v. Bank (1889) 61 Vt. 373, 17 Atl. 748; Bank v. Berry (1893) 91 Ga. 264, 18 S. E. 137; Freeman Mfg. Co. v. Nat. Bank of Republic (1894) 160 Mass. 398, 35 N. E. 865; Garner v. Bank (C. C.) 66 Fed. 369; Rosenheim Real Estate Co. v. Southern Nat. Bank (Tenn. Ch. App. 1897) 46 S. W. 1026; Hazen v. Bank (1898) 70 Vt. 543, 41 Atl. 1046, 67 Am. St. Rep. 680; Dennis v. Bank (Jan., 1899) 127 Cal. 453, 59 Pac. 777, 78 Am. St. Rep. 79.  The Revised Statutes were approved on the 22d day of June, 1874.  The provisions of section 5242, except the clause prohibiting attachments, injunctions, and executions, were a re-enactment of section 52 of the national currency act of 1864 (13 Stat. p. 115).  The clause relating to attachments, injunctions, and executions was first enacted by the act of congress of March 3, 1873 (17 Stat. p. 608).  By that act section 57 of the national currency act of 1884 was amended by adding thereto the clause in question, in the following form:

"And provided further, that no attachment, injunction or execution shall be issued against such association, or its property, before final judgment in such suit, action or proceeding, in any state, county or municipal court."

Said section 57, at the time this amendment was ingrafted thereon, read as follows:

"And be it further enacted that suits, actions and proceedings against any association under this act may be had in any circuit, district or territorial court of the United States held within the district in which such association may be established; or in any state, county or municipal court in the county or city in which said association is located, having jurisdiction in similar cases; provided, however, that all proceedings to enjoin the comptroller under this act shall be had in a circuit, district or territorial court of the United States, held in the district in which the association is located." 13 Stat. p. 116.

It appears clearly that after this amendment, and prior to the adoption of the Revised Statutes, the state courts were absolutely prohibited from issuing an attachment, injunction, or execution

against a national bank prior to judgment, regardless of its solvency or insolvency. The subsequent enactment of this clause in section 5242 was not intended to modify such prohibition. Freeman Mfg. Co. v. Nat. Bank, supra; Bank v. Berry, supra; Bank v. Mixter, supra.

It is conceded that section 5242 has not been expressly repealed, but it is contended by the respondent that the clause under consideration has been repealed by implication by section 4 of the act of congress of July 12, 1882 (22 Stat. p. 162), which provides as follows:

"That any association so extending the period of its succession shall continue to enjoy all the rights and privileges and immunities granted, and shall continue to be subject to all the duties, liabilities and restrictions imposed by the Revised Statutes of the United States and other acts (1) having reference to national banking associations, and it shall continue to be in all respects the identical association it was before the extension of its period of succession. Provided, however, that the jurisdiction for suits hereafter brought by or against any association established under any law providing for national banking associations, except suits between them and the United States, or its officers or agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national banking association may be doing business when such suits may be begun; and all laws and parts of laws of the United States inconsistent with this provision be, and the same are hereby, repealed."

This statute is not inconsistent with the clause of section 5242 prohibiting the issue of warrants of attachment, injunctions, and executions against national banks by the state courts after judgment. The act of 1882 was intended to prescribe the forum for litigations by and against national banks, and does not relate to provisional remedies to be had in such actions. It was designed to prescribe the place where and the courts in which such actions may be prosecuted, but it was not intended to regulate the procedure in the actions when brought. Raynor v. Bank, 93 N. Y. 971; Petri v. Bank, 142 U. S. 644, 12 Sup. Ct. 325, 35 L. Ed. 1144; Freeman Mfg. Co. v. Nat. Bank, supra.

These views lead to the conclusion that the order appealed from should be reversed, with $10 costs and disbursements, and the warrant of attachment vacated, with $10 costs.

PATTERSON and McLAUGHLIN, JJ., concur. VAN BRUNT, P. J., and O'BRIEN, J., dissent.