## THE PLANTERS LOAN AND SAVINGS BANK v. BERRY.

The statute of the United States prohibits seizure of property belonging to national banks (irrespective of whether they be solvent or insolvent), before final judgment, by virtue of any attachment issued under a State law and returnable to a State court. Any such seizure is therefore void, and a bond given by a national bank to dissolve such attachment served by summons of garnishment, is also void. The giving of such bond is not an appearance in the attachment case so as to make valid a judgment entered up on the bond in that case, against the bank and the sureties executing the bond. The judgment is wholly void, and an affidavit of illegality made and filed by one of the sureties in resistance to a levy upon his property under an execution founded on the judgment, must be sustained. The judgment being wholly void for want of jurisdiction in the court rendering it, affidavit of illegality is a proper defensive remedy.

February 13, 1893.

Before Judge EVE. City court of Richmond county. May term, 1892.

In connection with the facts stated in the opinion, see *National Park Bank* v. *Berry*, 89 *Ga.* 333.

GEORGE A. MERCER, JOSEPH B. CUMMING and BRYAN CUMMING, for plaintiff in error.

FRANK H. MILLER and WILLIAM K. MILLER, *contra.*

BLECKLEY, Chief Justice.

How the statutes of the United States stand at the present time on the subject of protecting national banks against the seizure of their effects by virtue of attachments in advance of final judgment, may be seen by reference to U. S. Rev. Stat., §5242. The only words necessary to be now quoted are these: "And no attachment, injunction or execution, shall be issued against such association or its property before final judgment

in any suit, action or proceeding, in any State, county, or municipal court." The opinion, whether professional or judicial, which construes this legislation as allowing seizure under attachment before final judgment in case the defendant bank is solvent, and prohibiting it only where the bank is insolvent, is manifestly unsound. Certainly, no such distinction is made in the letter, and we discern no necessity for it in the context or in the reason and spirit of the legislation.   The statutory policy seems to be to prevent all preference or priority in claims against these banks sought to be acquired by seizure of effects under State authority before the final adjudication of such claims, and to protect the banks from being weakened or crippled by such antecedent seizures.   The national banks created by Congress are to control their own assets and resources, as against State interference at the instance of creditors, or of pretended creditors, until the real existence of the alleged debts has been ascertained by final judgment.   Ante-judgment seizures cannot be made; a State can make post-judgment seizures only.   Mesne process will not suffice for seizing by State courts; these courts can seize alone by final process.   This policy may be wise or unwise, wholesome or unwholesome, but in either event it is the one established by competent legislative authority, and must be respected and enforced accordingly.   In Pacific National Bank *v.* Mixter, 124 U. S. 727, Waite, C. J., said: "Although the provision was evidently made to secure equality among the general creditors in the division of the proceeds of the property of an insolvent bank, its operation is by no means confined to cases of actual or contemplated insolvency.   The remedy is taken away altogether, and cannot be used under any circumstances."   Whether this was *obiter* or not as applied to the facts of that case, we agree with it and accept it as a sound interpretation of the statute.   And

we agree with the Court of Appeals of New York, that no aid can be derived from the act of Congress of July 12th, 1882, providing that the jurisdiction for suits brought against national banks shall be the same as for suits against State banks. Raynor *v.* Pacific National Bank, 93 N. Y. 371.

In the case at bar, the attachment was issued under a law of this State, and was returnable to one of the courts of the State. It was levied, before final judgment, by the service of a summons of garnishment upon one of the debtors of the national bank, the defendant in attachment. This was a seizure of the debt, and the debt was the property of the bank. The seizure was utterly void, and the bond given by the bank to dissolve the garnishment was equally void. Pacific National Bank *v.* Mixter, 124 U. S. 728, 729 (*supra*). Certainly it was void as a statutory bond, for as there was no valid statutory authority for issuing or serving the garnishment, there could be none for taking the bond. In principle, this was ruled in the case of *Bruce* v. *Conyers*, 54 *Ga.* 678. No suit or action has been brought upon this bond, but treating it solely as a statutory bond, and applying to it the spirit of sections 3319 and 3540 of the code, the plaintiff in attachment caused judgment upon it to be rendered against the bank and the sureties who joined with the bank in executing it. The judgment was the outcome of the original suit brought against the bank by attachment. In that suit the sureties on the bond entered no appearance, and had no right to enter any. They were not heard, and could not have been heard had they so desired, save, perhaps, by some collateral motion. It is contended, however, that by giving the bond, the bank did what was equivalent, under section 3328 of the code, to appearing and making defence. Grant this was so, the result would be only that "the judgment rendered against him [the

bank] in such case shall bind all his property, and shall have the same force and effect as when there has been personal service." Surely this would be quite enough to follow as a necessary legal incident of giving a void bond. But to render a binding judgment *on the bond* against the bank and the sureties, would be much more than this. It would be to change the character of the bond from void to valid, and affect the sureties by the attachment suit equally with their principal. It is manifest that in order to reach the sureties and render them liable, mere appearance, or any other act of their principal, would not suffice. Even a confession of judgment by the latter would in nowise affect the former if the bond was void. In order for anything done by him as their representative to affect them, the real relation, not merely the nominal relation, of principal and surety, would have to exist. If there was no jurisdiction to issue the attachment or the garnishment pending the attachment, and no jurisdiction to serve the garnishment or cause it to be served, there was none to require the bond or to take it, or to enter up judgment thereon in the attachment suit, whether jurisdiction over the defendant in that suit—jurisdiction over the bank *in personam*—was acquired or not.. To render judgment on the bond, such as was rendered, it was necessary to have jurisdiction over the sureties also. This could not be acquired by taking the bond, for there was no jurisdiction to take it; and there is no pretext that it was acquired otherwise. To show that the bank did enough to subject itself to a general judgment *in personam* under section 3328 of the code, even could this be conceded, would leave the want of jurisdiction over the sureties untouched. The Planters Loan and Savings Bank, the party now complaining, is one of these. Its property has been levied upon under a *fi. fa.* based upon this judgment. It has filed an affidavit of illegal-

ity, and in so doing has chosen the proper remedy. It
has not had its day in court; there has been no court
having jurisdiction to bind it. It is not bound, and to
overrule its affidavit and to order the execution to pro-
ceed was error. Let an order be entered in the city
court sustaining the affidavit of illegality.

<em>Judgment reversed.</em>