HENRY VAN REED, Appellant, *v*. THE PEOPLE'S NATIONAL BANK OF LEBANON, PENNSYLVANIA, Respondent.

1. ATTACHMENT AGAINST SOLVENT NATIONAL BANK PROHIBITED — U. S. R. S. § 5242. Section 5242 of the United States Revised Statutes, prohibiting the issuing of an attachment before judgment against national banking associations by any state, county or municipal court, applies to a solvent national bank.

2. ACTS PROHIBITING ATTACHMENT NOT REPEALED BY ACT OF CONGRESS OF 1882 — CONSTRUCTION OF ACT OF 1882. The act of Congress of July 12, 1882 (22 U. S. Stat. at Large, 162), did not repeal the earlier acts of Congress prohibiting attachments against national banking associations — that act was intended to prescribe the forum for litigation by and against national banks and does not relate to provisional remedies to be had in such actions. It was designed to prescribe the place where and the courts in which such actions may be prosecuted, but it was not intended to regulate the procedure in such actions when brought, nor was it intended to so regulate the method of commencing an action as to enable a state court to acquire jurisdiction over the property of a national bank without acquiring jurisdiction of the bank itself.

*Van Reed* v. *People's Nat. Bank*, 67 App. Div. 75, affirmed.

(Argued January 6, 1903; decided January 20, 1903.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 4, 1902, which reversed an order of Special Term denying a motion to vacate an attachment and granted said motion.

On the 6th of September, 1901, a warrant of attachment was issued in this action against the property of the defend-

ant, a solvent national bank, organized under the laws of the United States, located and carrying on business in the state of Pennsylvania. The defendant moved, at Special Term, to vacate the attachment upon the ground that it was issued against a national bank contrary to the statutes of the United States, but the motion was denied. Upon appeal to the Appellate Division the order denying the motion was reversed and the motion granted, two of the justices dissenting, but leave was given to appeal to this court, and the following questions were certified to us for decision:

"*First.* Is the defendant exempt from attachment before judgment under section 5242 of the United States Revised Statutes?

"*Second.* Are the rights claimed by the plaintiff, to attachment against the defendant before judgment and to the jurisdiction thereby acquired, preserved and given by section four of the act of Congress of July 12th, 1882?"

*Carlton B. Pierce* for appellant. The property of a solvent national bank can be attached. (*Robinson* v. *Bank*, 81 N. Y. 385; *Market Bank* v. *Pacific Bank*, 64 How. Pr. 1; *Earle* v. *Pennsylvania*, 178 U. S. 449; *Petrie* v. *Comcl. Bank*, 142 U. S. 644.)

*Percy S. Dudley* and *George B. Woomer* for respondent. The defendant is exempt from attachment before final judgment under section 5242 of the United States Revised Statutes. (*P. Nat. Bank* v. *Mixter*, 124 U. S. 721; *Bank of Montreal* v. *F. Nat. Bank*, 49 Hun, 607; *F. Mfg. Co.* v. *Nat. Bank*, 160 Mass. 398; *Safford* v. *Nat. Bank of Plattsburgh*, 61 Vt. 373; *Hazen* v. *Lyndonville Nat. Bank*, 70 Vt. 543; *F. Nat. Bank* v. *La Due*, 39 Minn. 415; *R. R. E. Co.* v. *S. Nat. Bank*, 46 S. W. Rep. 1026; *P. L., etc., Bank* v. *Berry*, 91 Ga. 264; *Dennis* v. *F. Nat. Bank*, 127 Cal. 453.) The act of Congress of July 12, 1882, section 4, neither repealed the clause of section 5242 in question nor gave any new or different right to creditors of national banks in regard

to provisional remedies. (*Raynor* v. *P. Nat. Bank*, 93 N. Y. 371; *Petri* v. *C. Nat. Bank*, 142 U. S. 644; *F. Mfg. Co.* v. *Nat. Bank of Republic*, 160 Mass. 398.)

VANN, J. The questions certified depend upon the construction of certain statutes of the United States, and such construction will be aided by investigating their history.

By section 52 of the National Currency Act, approved June 3rd, 1864, all transfers, assignments, etc., made in contemplation of insolvency by a banking association organized under the act, were declared void. Section 57 of the same act, after naming the courts, including various state courts, in which actions might be brought against national banks, continued as follows: " Provided, however, that all proceedings to enjoin the comptroller under this act shall be had in a circuit, district, or territorial court of the United States, held in the district in which the association is located." (13 U. S. Stat. at Large, p. 116, ch. 106, §§ 52 and 57.)

By the act of March 3rd, 1873, section 57 of said act was amended by adding thereto the following: " And provided further, That no attachment, injunction, or execution shall be issued against such association, or its property, before final judgment in any such suit, action, or proceeding in any state, county, or municipal court." (17 U. S. Stat. at Large, p. 603, ch. 269, § 2.)

By the act to revise and consolidate the statutes of the United States in force on the 1st day of December, 1873, approved June 22, 1874, section 52 of the original act and said amendment of section 57 were consolidated in section 5242 by attaching the latter at the end of the former, but not in the form of a proviso. (U. S. R. S. § 5242.)

The only other statute that is claimed to have any bearing upon the questions presented is an act to enable national banking associations to extend their corporate existence, approved July 12th, 1882. (22 U. S. Stat. at Large, p. 162, ch. 290.) By section four of that act the rights and privileges, as well as the duties and liabilities, of any banking association extend-

ing the period of its succession in accordance with the act, are preserved with this proviso : " That the jurisdiction for suits hereafter brought by or against any association established under any law providing for national banking associations, except suits between them and the United States, or its officers and agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States, which do or might do banking business where such national banking associations may be doing business when such suits may be begun : And all laws and parts of laws of the United States inconsistent with this proviso be, and the same are hereby, repealed."

In 1880, the right to issue an attachment against the property of a solvent national bank was sustained by this court, upon the ground that the prohibition of section 5242 applies only to insolvent corporations or those about to become so. (*Robinson* v. *National Bank of Newberne*, 81 N. Y. 385, 392.)

In 1883, the right to issue an attachment against the property of an insolvent national bank was denied by this court. It was further held that section 5242 was not repealed by the act of July 12th, 1882, because the latter relates to the jurisdiction of courts to entertain suits and the former to particular proceedings in such suits. (*Raynor* v. *Pacific National Bank*, 93 N. Y. 371.)

In 1887, the subject was considered by the Supreme Court of the United States. (*Pacific National Bank* v. *Mixter*, 124 U. S. 721.) In that case it appeared that a national bank became embarrassed on the 20th of November, 1881, "and was placed in charge of a bank examiner, in whose control it remained until March 18th, 1882, when its doors were opened for business with the consent of the Comptroller of the Currency." In March and April, 1881, while it was a going concern, and, so far as appears, solvent, attachments were issued against its property, and it was held that they were void. The broad doctrine was laid down by Chief Justice WAITE, with whom all the justices concurred, that an

attachment could not issue out of a state court against the property of a national banking association, whether solvent or insolvent.   The court said : " The fact that the amendment of 1873, in relation to attachments and injunctions in state courts was made a part of § 5242, shows the opinion of the revisers and of Congress that it was germain to the other provision incorporated in that section, and was intended as an aid to the enforcement of the principle of equality among the creditors of an insolvent bank.   But however that may be, it is clear to our minds that, as it stood originally as part of § 57 after 1873, and as it stands now in the Revised Statutes, it operates as a prohibition upon all attachments against national banks under the authority of the state courts.   That was evidently its purpose when first enacted, for it was part of a section . which, while providing for suits in the courts of the United States or of the State, as the plaintiff might elect, declared in express terms that if the suit was begun in a state court no attachment should issue until after judgment.   The form of its re-enactment in the Revised Statutes does not change its meaning in this particular.   It stands now, as it did originally, as the paramount law of the land that attachments shall not issue from state courts against national banks, and writes into all state attachment laws an exception in favor of national banks.   Since the act of 1873 all the attachment laws of the state must be read as if they contained a provision in express terms that they were not to apply to suits against a national bank."   (p. 726.)

It was also held that the act of July 12th, 1882, did not repeal the prohibition by which the remedy of attachment is taken away altogether, so  that it " cannot be used under any circumstances."

In 1889 the subject was considered by the Court of Appeals for the third time in an action in which an attachment had been issued against a national bank on the 18th of June, 1887, and a receiver of the bank was appointed nine days later. The Special Term denied the motion to vacate, but the General Term reversed and vacated the attachment.   Upon appeal,

this court affirmed " on the authority of *Pacific National Bank* v. *Mixter* " (*supra*). (*Bank of Montreal* v. *Fidelity National Bank*, 17 N. Y. S. R. 88 ; 112 N. Y. 667.)

Assuming that the banking association in that case was insolvent when the attachment was granted, still it is to be observed that this court did not cite its own *Raynor* case, which involved an insolvent bank, as the authority for its judgment, but cited the *Mixter* case, in which it was held that an attachment against a national bank whether solvent or insolvent is void.

We think, and such is the recollection of Judge GRAY, the only member of the present court who participated in that decision, that it was the intention of this court to yield its previous views to those expressed by the Supreme Court of the United States upon the subject.

All the courts of last resort in the different states that have passed upon the question have held that the prohibition of the Federal statute applies to all national banks, regardless of their pecuniary condition. (*Freeman Manufacturing Co.* v. *National Bank of the Republic*, 160 Mass. 398 ; *Planters' Loan & Savings Bank* v. *Berry*, 91 Ga. 264 ; *First National Bank of Kasson* v. *La Due*, 39 Minn. 415 ; *Dennis* v. *First National Bank of Seattle*, 127 Cal. 453 ; *Safford* v. *First National Bank of Plattsburgh*, 61 Vt. 373 ; *Rosenheim Real Estate Co.* v. *Southern National Bank*, 46 S. W. Rep. [Tenn.] 1026.) The same conclusion was reached by the Circuit Court of the United States for the southern district of New York. (*Garner* v. *Second National Bank of Providence*, 66 Fed. Rep. 369.)

The power to create national banks carries with it the power to protect them by conferring special rights, privileges and immunities. In 1873 Congress evidently thought that the efficiency of these institutions might be impaired if attachments were issued out of the state courts against their property, and it, therefore, prohibited such writs, among others, altogether. The only question before us is whether that is still the effect of the acts of Congress as they now stand.

While the use of the words, "such association" in section 5242 would justify the construction, contended for by the appellant, that the prohibition is confined to associations which have committed an act of insolvency, the court of last resort for the construction of Federal statutes has decided the other way, and we are bound by its · conclusion. (*Pacific National · Bank* v. *Mixter, supra.*) We do not think the opinion in that case is obiter so far as it applies to a solvent bank, for 'as we understand the statement of facts the Pacific National Bank was solvent when the attachments were issued against it. While it became embarrassed six or seven months later, it does not appear that it was insolvent or had committed an act of insolvency, or had done anything in contemplation of insolvency, when the attachments were issued or levied. The chief justice obviously did not write an elaborate opinion to show that an attachment could not issue against an insolvent bank, for that was not open to question. It has always been conceded that the statute at least prohibits an attachment against an insolvent bank, but the question considered and decided was whether an attachment could be issued against a solvent bank. That was a live question still open in that court, and there is no suggestion, either in the statement of facts or the opinion, indicating that the court regarded the question before it as different from the question now before us. The first question certified to us should, therefore, be answered in the affirmative.

The second question involves the effect of the act of July 12th, 1882, but this requires no discussion, as it has already been held by the Supreme Court of the United States, as well as by ourselves, that said act did not repeal the earlier acts of Congress prohibiting attachments against national banks. (*Pacific National Bank* v. *Mixter, supra; Raynor* v. *Pacific National Bank, supra.*)

The argument is made that if the defendant had been a foreign state bank with funds here, our courts could have acquired jurisdiction *in rem* through the process of attachment, and that hence the same jurisdiction exists over the

property of a foreign national bank situated in this state. This construction of the last act, however, would violate the spirit of all the acts relating to the subject when read together. We agree with the Appellate Division that " the act of 1882 was intended to prescribe the forum for litigations by and against national banks, and does not relate to provisional remedies to be had in such actions. It was designed to prescribe the place where and the courts in which such actions may be prosecuted, but it was not intended to regulate the procedure in such actions when brought."

Nor, we might add, was it intended to so regulate the method of commencing an action as to enable a state court to acquire jurisdiction over the property of a national bank without acquiring jurisdiction of the bank itself.

We think that the order appealed from should be affirmed, with costs ; that the first question certified should be answered in the affirmative and the second in the negative.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, MARTIN and CULLEN, JJ., concur.

Order affirmed.