## HILL *v.* FIRST NATIONAL BANK OF WEST POINT.

The court did not err in refusing an interlocutory injunction upon the ground "that under the law this court is without jurisdiction to grant an injunction in this matter." Under the provisions of section 5242 of the Revised Statutes of the United States (U. S. Comp. Stat. § 9834), an injunction can not be issued against a national banking association or its property before final judgment in any suit, action, or proceeding in any State, county, or municipal court. The provisions of section 5242 are not affected by the subsequent passage of the act of Congress of July 12, 1882 (22 Stat. at Large, 162, c. 290).

No. 5468.   JANUARY 11, 1927.

Petition for injunction.  Before Judge Roop.  Troup superior court.  May 10, 1926.

*Hall & Jones,* for plaintiff.   *Lovejoy & Mayer,* for defendant.

RUSSELL, C. J.   C. E. Hill filed an equitable petition against the First National Bank of West Point, Georgia, in which he alleged that he had purchased certain shares of the capital stock of the bank under false representations of certain officers of the bank as to its apparent solvency, when such officers at the time well knew that the bank was insolvent; that 20 of the 30 shares of the stock purchased by the petitioner were owned by Amos Huguley, president of the bank; that the officers and directors of the bank foresaw the collapse of the bank and were secretly unloading their stock.  In pursuance of this fraudulent scheme the bank loaned Hill the money to buy the stock, and took Hill's notes for the loan.  The officers of the bank who negotiated the loan knew the stock was almost worthless, and the plan was to aid the president to unload his stock on Hill at a price above par. Some months after this the bank went into voluntary liquidation

---

Banks and Banking, 7 C. J. p. 837, n. 5; p. 838, n. 7.

and sold its entire assets to the Citizens Bank of West Point. Among the assets were the negotiable notes of Hill. The plaintiff sought an injunction against the bank, its officers, agents, and employees, to restrain them from transferring his notes, for the purpose of preserving the status quo until the rights of the parties may be determined in the case.

The case was heard, by consent of both parties, on the following demurrer filed by the defendant, which was controlling on the main issue involved: "Defendant demurs to said petition on the ground that the petition shows on its face that this court is without jurisdiction to grant the injunctive relief prayed for in said petition, for the reason that the petition alleges that the First National Bank, the defendant, is a corporation chartered under and operating by virtue of the laws of the United States, with reference to the incorporation of national banks, and the petition further showing that no final judgment has been obtained by plaintiff against defendant in said cause." The bill of exceptions recites that "No evidence was offered by either party, and by consent the sole issue submitted to the judge for determination was the issue under the foregoing demurrer; and after argument had thereon, the said judge took the matter under consideration and thereafter, on the 10th day of May, 1926, passed an order sustaining said demurrer, and refusing the temporary injunction· as prayed for in said petition, but by proper order the restraining order previously granted was continued in effect until the matter could be passed upon by the Supreme Court; to which judgment sustaining said demurrer, and denying jurisdiction of the court to grant the injunctive relief prayed for, the plaintiff in error in this bill of exceptions, Charles E. Hill, then and there excepted, and now excepts, and assigns the same as error as being contrary to law, and says that the said judge then and there should have overruled said demurrer and should have ruled that the court had jurisdiction to grant the relief prayed for."

The only question raised in this case is whether a superior court of this State has jurisdiction to enjoin a national bank. The plaintiff contends that the State courts have jurisdiction against national banks in all matters according to their respective processes which do not affect the function of said banks within the limits of their creation as agents of the national government, and if

they are not in conflict with a paramount law of Congress. Plaintiff concedes, however, that national banks are agents of the national government, and so far as their activities are within the limits of their creation and in furtherance of the purposes of their organization the States have no power to interfere. The able and distinguished counsel for the plaintiff argues eloquently the theory of Jefferson as touching the question of the relative jurisdiction of the national and State governments, and it is true, as stated by him, "that our wisest statesmen are fearlessly combating that [the centralizing tendency] theory and stubbornly contesting the centralization of power in the Federal Government." Counsel seeks to draw a distinction between cases where an injunction may be sought as a means of obtaining a lien, and a case such as the case at bar, where no lien is sought to be created or obtained but it is merely sought to maintain the status quo, and bases a scholarly argument upon the fact that Congress, in including in section 5242 of the Revised Statutes, the word "injunction" between the words "attachment" and "execution" intended the word injunction to refer only to a proceeding whereby a lien is created; but we are of the opinion that not only the decisions of the Supreme Court of the United States, but the decisions of this court as well, sustain the ruling of the judge of the lower court in holding that a State court is without jurisdiction to enjoin a national bank or its officers· in respect to any act within the scope of the purposes for which it was organized under the acts of Congress. It is true that in the case of National Bank *v.* Commonwealth, 76 U. S. 353 (19 L. ed. 701), the ruling was in accord with the position maintained by the plaintiff in error in this case; but the decision in that case was rendered on March 28, 1870, and section 5242 of the Revised Statutes, which declared that injunction should not be used to affect the actions of national banks, was not enacted until March 3, 1873. For this reason the ruling does not affect the case at bar. In the case of First National Bank in St. Louis *v.* Missouri, 263 U. S. 640 (44 Sup. Ct. 213, 68 L. ed. 486), the question now under discussion was not involved, nor is section 5242 of the Revised Statutes of the United States referred to in the discussion of the case.

The question now before us has been before this court three times. *Planters Loan & Savings Bank* v. *Berry*, 91 *Ga.* 264 (18

S. E. 137) ; *National Bank of Savannah* v. *Craven,* 147 *Ga.* 753
(95 S. E. 246) ; *American National Bank of Macon* v. *Dure,* 148
*Ga.* 498 (97 S. E. 70). In the *Berry* case, in which Mr. Chief
Justice Bleckley delivered the opinion of the court, it was an at-
tachment and not an injunction which was involved, but the
*Craven* and *Dure* cases were both applications for injunction; and
in both this court held that, in view of the provisions of section
5242 of the Revised Statutes, it was erroneous for the superior
court to grant an interlocutory injunction against the national
bank until or before a final judgment. As said by Chief Justice
Bleckley in construing section 5242, supra: "The only words
necessary to be now quoted are these: 'And no attachment, injunc-
tion, or execution shall be issued against such association [national
banking association] or its property before final judgment in any
suit, action, or proceeding, in any State, county, or municipal
court.' The opinion, whether professional or judicial, which con-
strues this legislation as allowing seizure under attachment before
final judgment in case the defendant bank is solvent, and pro-
hibiting it only where the bank is insolvent, is manifestly un-
sound. Certainly no such distinction is made in the letter, and
we discern no necessity for it in the context or in the reason and
spirit of the legislation. The statutory policy seems to be to pre-
vent all preference or priority in claims against these banks sought
to be acquired by seizure of effects under State authority before
the final adjudication of such claims, and to protect the banks
from being weakened or crippled by such antecedent seizures. The
national banks created by Congress are to control their own assets
and resources, as against State interference at the instance of
creditors, or of pretended creditors, until the real existence of the
alleged debts has been ascertained by final judgment. Ante-judg-
ment seizures can not be made; a State can make post-judgment
seizures only. Mesne process will not suffice for seizing by State
courts; these courts can seize alone by final process. This policy
may be wise or unwise, wholesome or unwholesome; but in either
event it is the one established by competent legislative authority,
and must be respected and enforced accordingly. In Pacific Na-
tional Bank *v.* Mixter, 124 U. S. 727, Waite, C. J., said: 'Al-
though the provision was evidently made to secure equality among
the general creditors in the division of the proceeds of the property

of an insolvent bank, its operation is by no means confined to cases of actual or contemplated insolvency. The remedy is taken away altogether, and can not be used under any circumstances.' Whether this was obiter or not as applied to the facts of that case, we agree with it and accept it as a sound interpretation of the statute. And we agree with the Court of Appeals of New York, that no aid can be derived from the act of Congress of July 12, 1882, providing that the jurisdiction for suits brought against national banks shall be the same as for suits against State banks. Raynor *v.* Pacific National Bank, 93 N. Y. 371."

In *National Bank of Savannah* v. *Craven,* supra, this court held: "The national bank act (Rev. Stat. § 5242, U. S. Comp. St. § 9834) provides that 'All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction, or execution shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court.' *Held,* that the prohibitory part of the statute is sufficiently broad to inhibit a State court, in a suit for interpleader by a mortgagor, from enjoining, until the final trial, a national bank, claiming to be a transferee, from selling land under a power of sale contained in the mortgage, where there is a dispute between the bank and its assignor as to the right to collect and apply the proceeds of the note secured by the mortgage. Pacific Nat. Bank *v.* Mixter, 124 U. S. 721 (8 Sup. Ct. 718, 31 L. ed. 564); Freeman Mfg. Co. *v.* Nat. Bank, 160 Mass. 398 (35 N. E. 865); Van Reed *v.* Peoples Nat. Bank, 198 U. S. 554 (25 Sup. St. 775, 49 L. ed. 1161, 3 Ann. Cas. 1154); *Planters Loan &c. Bank* v. *Berry,* 91 *Ga.* 264 (18 S. E. 137). It was erroneous to grant the interlocutory injunction." In *Amer-*

*ican National Bank of Macon* v. *Dure*,. supra, in which a petition for injunction ancillary to certain suits was asked, it was held (1) that "the grant of the interlocutory injunction was error." (2) "Further, the case is controlled by the ruling in *National Bank of Savannah* v. *Craven*, 147 *Ga.* 753 (95 S. E. 246), where it was held that the prohibitory clause in the national bank act (Rev. St. § 5242, U. S. Comp. St. 1916, § 9834), providing that 'no attachment, injunction, or execution shall be issued against such association [national banking association] or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court,' is sufficiently broad to inhibit a State court from issuing an injunction against a national banking association before final judgment against it."

As appears from the approval of the decision of the Court of Appeals of New York contained in the opinion of Mr. Chief Justice Bleckley in the *Berry* case, the passage of the act of Congress of July 12, 1882 (22 Stat. at Large, 162, c. 290)`, does not repeal or supersede the provisions of section 5242, supra, and therefore, notwithstanding the passage of that legislation, the United States court still has exclusive jurisdiction as to attachments and injunctions where a national bank is concerned unless and until a final judgment has been rendered in the case. In Van Reed *v.* Peoples Nat. Bank, 198 U. S. 554 (25 Sup. Ct. 775, 49 L. ed. 1161), the Supreme Court of the United States passed upon the question and held: "There is nothing in this section enlarging the right of attachment against national banks. Before the passage of this section circuit courts of the United States had jurisdiction of suits against national banks, because they were corporations of Federal origin. It was the purpose of this legislation to deprive such banks of the right to invoke the jurisdiction of the Federal courts simply upon the ground that they were created by and exercised their powers under the acts of Congress. Petri *v.* Commercial Bank, 142 U. S. 644 (12 Sup. Ct. 325, 35 L. ed. 1145) ; Continental National Bank *v.* Buford, 191 U. S. 119, 123 (24 Sup. Ct. 54, 48 L. ed. 119). It regulated the jurisdiction of the courts to entertain such actions against corporations of this character, and had nothing to do with the kind and character of remedies which could be had against them. Certainly there is nothing in the act repealing the prior provisions of section 5242, above quoted."

We reach the conclusion that the lower court is without jurisdiction to grant injunctive relief in the case at bar until there has been a final judgment upon the merits of the plaintiff's right to recover and fixing the amount of such recovery; and therefore the court properly refused an interlocutory injunction. In a suit against a national bank the plaintiff is not entitled to injunctive relief until a final judgment has been obtained by the plaintiff against the defendant in the cause.

*Judgment affirmed. All the Justices concur.*